UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

FARRELL SACKS,                                              :

                                    Plaintiff,             :        11 Civ. 5778 (DAB) (DF)

                    -against-                              :        **REPORT AND**
                                                                    **RECOMMENDATION**
GANDHI ENGINEERING INC.,                                   :

                                    Defendant.            :

------------------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: _8/23/13_

**TO THE HONORABLE DEBORAH A. BATTS, U.S.D.J.:**

*Pro se* plaintiff Farell Sacks ("Plaintiff") brings this employment discrimination action

against defendant Gandhi Engineering, Inc. ("Ghandi Engineering" or "Defendant"), pursuant to

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"),

the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.* (the

"ADEA"), and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101,

*et seq.* (the "ADA").  Specifically, Plaintiff claims that Defendant terminated him and failed to

rehire him because of his religion, his age, and a perceived disability.

Currently before the Court is Defendant's motion for summary judgment (Dkt. 37), which

has been referred to me for a report and recommendation.  For the reasons that follow, I

recommend that Defendant's motion for summary judgment be granted in part and denied in part.

**BACKGROUND**

**A.    Factual Background**

It is undisputed that Plaintiff was employed by Defendant from September 7, 2010

through October 22, 2010, as a "Senior Inspector" on a project, known as the "149th Street

Bridge," which the New York City Department of Transportation ("DOT") had hired Defendant

to oversee.  (*See* Local Rule 56.1 Statement, dated Feb. 22, 2013 ("Def. Rule 56.1 Stmt.")

(Dkt. 45) ¶¶ 6, 8-9; Response to Statement of Material Facts Pursuant to Local Rule 56.1, dated

May 3. 2013 ("Pl. Response") (Dkt. 59) ¶¶ 6, 8-9.[1])  It is also undisputed that Defendant's

principal, Dr. Kirti Ghandi ("Ghandi"), is Hindu (*see* Def. & Pl. 56.1 Stmts. ¶ 16[2]), and that the

man who served as Plaintiff's immediate supervisor, Godfrey Passaro ("Passaro"), is Roman

Catholic (*see id.*).  Plaintiff is Jewish, and was 55 years old when he worked for Defendant.  (*See*

Def. & Pl. 56.1 Stmts. ¶¶ 11, 15.)

According to Defendant, Plaintiff's job duties, as a Senior Inspector, included, *inter alia*,

turning in a "Daily Work Report" to the Office Engineer at the Field Office, paying contractors

for work done, climbing up and down on ladders to inspect completed work, making sure that all

work was performed in accordance with contract drawings and City specifications, walking on

the "[r]ebar mat" to confirm that rebars were properly installed and supported, and performing

required "Concrete Tests."  (*See* Def. 56.1 Stmt. ¶ 24.)  For the most part, Plaintiff agrees that

these were his assigned duties.  (*See* Pl. Response ¶ 24.)  The parties dispute, however, whether

Plaintiff properly performed these duties.

---

[1] In opposition to Defendant's summary judgment motion, Plaintiff has submitted evidence (attached as exhibits B-H to his Rule 56.1 Response), including the full transcript of his deposition and certain documents exchanged in discovery, although he does not always cite to this evidence in his Rule 56.1 Response.  Rather, he refers to portions of this evidence in a separate, appended document that he has titled "Additional Points and Conclusions."  (Pl. Response, Ex. A ("Pl. Add'l Points").)  As Plaintiff is proceeding *pro se*, this Court has looked not only to the evidence cited in his Rule 56.1 Response, but also to his additional submissions, to ascertain whether there are material disputed issues of fact in this case that would preclude summary judgment.

[2] For ease of reference, where Plaintiff admits to an assertion in Defendant's Rule 56.1 statement, the Court will cite to "Def. & Pl. 56.1 Stmts." and a paragraph number, as opposed to citing the two documents separately.

In this regard, Defendant contends that Plaintiff failed to submit reports on a timely basis, to walk on the rebar mat, to bend to measure concrete, to climb construction ladders to inspect work, to perform "any of the concrete tests, as required," or to pay contractors. (*See* Def. Rule 56.1 Stmt. ¶ 25.) For his part, Plaintiff asserts that he did perform all identified tasks in the manner required. (*See* Pl. Response ¶ 25.) Certainly, Plaintiff contends that he performed all of the physical inspection work that was part of his job. (*See id.*) As to the submission of his Daily Work Reports, Plaintiff apparently concedes that he did not submit those reports daily, but asserts that, as practical reality, he was only required to turn them in every few weeks, in batches, which he did. (*See id.* ¶ 24(a) (noting that "[t]here was no office engineer" at Plaintiff's work site); *id.*, Ex. B (deposition of Farrel Sacks, conducted on Nov. 14, 2012 ("Sacks Dep.")), at 59:14-60:8; 61:5-19 (explaining that Plaintiff turned in his daily reports when Passaro came to the site).) Finally, regarding the payment of contractors, Plaintiff contends that he wrote "work in progress" in the payment block instead of paying contractors because he was directed to do so by Passaro. (*See* Pl. Response ¶ 25.)

The parties also dispute nearly all facts regarding Plaintiff's termination. Defendant currently states, in its summary judgment papers, that the DOT told Ghandi that Plaintiff was "not satisfactorily performing his job" and asked Ghandi "to take [Plaintiff] off the 149th Street Bridge Project." (Def. Rule 56.1 Stmt. ¶ 26.) Defendant further states that, as a result, Plaintiff was informed, "on or about October 22, 2010 that his employment was being terminated due to performance." (*Id.* ¶ 27.) Similarly, Passaro now states, in an affidavit, that he informed Plaintiff that "his employment was being terminated due to performance." (Declaration of Keith J. Frank, Esq., in Support of Defendant's Motion for Summary Judgment, dated Feb. 22, 2013 ("Frank Decl.") (Dkt. 38), Ex. E (Affidavit of Godfrey Passaro, dated Feb. 21, 2013 ("Passaro Aff.")) ¶ 9.)

It should be noted, though, that, in response to the written deposition questions that Defendant's witnesses answered as part of the discovery process, Passaro swore that he did not give Plaintiff any reason for his termination "other than [that] it was what Dr. Ghandi told me to do." (Pl. Response, Ex. C, at 1.)  Further, Ghandi swore, in discovery, that he (not Passaro) told Plaintiff that Defendant "[could not] use his services[,] as [Plaintiff] [was] *unable* to perform his duties as an Inspector."  (Pl. Response, Ex. D, at 1 (emphasis added).)

Plaintiff disputes that his termination was at the behest of the DOT, noting that there is no written record of any such request.  (Pl. Response ¶ 26.)  Nonetheless, in describing what transpired when he was notified of his termination (which he claims was on October 21, 2010, not October 22 (*id.* ¶ 27)), Plaintiff does state that Passaro told him:  "The City is not happy with your agility."  (Pl. Add'l Points ¶ 5.)  Plaintiff also notes, though, that, in connection with his claim for unemployment insurance, Ghandi did not report that Plaintiff had been discharged for cause, but rather that he became unemployed due to "lack of work" and "[p]ermanent [l]ay-[o]ff." (*See id.*, ¶¶ 7-8 (referencing Pl. Response, Ex. G).)

The parties additionally dispute who filled the position of Senior Inspector at the 149th Street Bridge project after Plaintiff's employment was terminated.  According to Defendant, the position was filled by Uriel Aminov, a Ghandi Engineering employee who had been hired before Plaintiff, and who was 64 years old.  (Def. Rule 56.1 Stmt. ¶ 14.)  Plaintiff counters that he was "replaced by a series of individuals, and at times more than one individual simultaneously," and that inspector reports from the time period following Plaintiff's termination (reports that have not been submitted to the Court) would substantiate his position.  (*See* Pl. Response ¶ 14.)  This, though, seems to differ from the facts asserted by Plaintiff at his deposition, when he testified that, to his knowledge, his position was filled by a Ghandi Engineering employee who had

occasionally visited the project site while Plaintiff was there, and whom Plaintiff "believe[d]," "[f]rom the surname, probably," to be Hindu.  (*See* Sacks Dep., at 78:21-79:25.)  When asked for the source of his information that this particular employee had replaced him on the job, Plaintiff testified that he had learned this from one or more railroad employees who had worked on the same project and with whom Plaintiff had been friendly, but whose names he had since forgotten. (*See id.*, at 80:1-11.)

Defendant states, and Plaintiff concedes, that no one at Ghandi Engineering discussed Plaintiff's age (*see* Def. & Pl. 56.1 Stmts. ¶ 13) and that, during the period of Plaintiff's employment, Ghandi Engineering had 64 employees, of whom 42 (approximately 66%) were over the age of 40, and 34 (approximately 53%) were aged 50 to 90 (*see* Def. & Pl. 56.1 Stmts. ¶ 12).  Defendant also states, and Plaintiff does not contest, that Plaintiff never mentioned his religion to anyone at Ghandi Engineering, and that the company does not maintain records of employee religious affiliations.  (*See* Def. & Pl. 56.1 Stmts. ¶¶ 10, 13.)  Despite the lack of formal records, Defendant asserts, and Plaintiff admits, that "it was known informally that twelve [employees] were Christian, two were Coptic Christian, five were Jewish, four were Hindu, one was Muslim, one was Jain, one was Atheist and one Agnostic," but that Plaintiff's "religion when he was employed with Defendant was not known."  (Def. & Pl. 56.1 Stmts.¶ 17.)

Although Plaintiff's Amended Complaint explicitly claims that Defendant discriminated against Plaintiff both by terminating him and by failing to hire him (*see* Amended Complaint, dated Jan. 5, 2012 ("Am. Compl.") (Dkt. 13), at 2), Defendant's Rule 56.1 Statement does not include any facts relevant to Plaintiff's failure-to-hire claim.  Defendant does, however, submit a Declaration from Brenda Hill ("Hill"), its Director of Human Resources, in which Hill confirms that Plaintiff applied for re-employment, after his termination, but that Defendant did not rehire

him.  (*See generally* Frank Decl., Ex. G (Affidavit of Brenda Hill, dated Feb. 21, 2013).)  More

specifically, Hill states that, when Plaintiff "applied again for employment with Defendant just

after his termination [she] did not provide him with a reason for not hiring him," adding that

"based on his prior employment with Defendant he would not have been considered."  (*Id.* ¶ 6;

*see also* Pl. Response, Ex. E (discovery response from Hill stating that she did not give Plaintiff a

reason for not hiring him in Dec., 2010).)

In Plaintiff's sheet of "Additional Points," he only briefly references Defendant's "failure

to rehire [him] . . . in December, 2010."  (Pl. Add'l Points ¶ 9.)  In that submission, Plaintiff

appears to suggest that Defendant somehow told him that he was not rehired "based on poor

performance," but that this was false.  (*See id.*)  The Court notes, though, that any such version of

events would not only be contradictory to Hill's account, but also to Plaintiff's own deposition

testimony.  At his deposition, Plaintiff testified – consistent with Hill's Affidavit – that, in

December 2010, he applied for a job that Defendant was advertising on craigslist.org (*see* Sacks

Dep., at 103:75-104:4), that he spoke to Hill by phone about it, and that he was told he would not

be hired for the advertised position, but was not given a reason (*see id.*, at 104:5-18).

**B.**    **Procedural History**

By his "best recollection," Plaintiff filed a charge of discrimination with the EEOC on

April 16, 2011.  (Am. Compl. § 3(A).)  The EEOC was unable to conclude that a violation

occurred, and issued a "right to sue" letter on May 17, 2011.  (*See id.*, App'x (copy of right to sue

letter).)

Plaintiff initiated the present action with a *pro se* form Complaint dated August 9, 2011,

seeking $100,000 in lost wages.  (*See* Compl. (Dkt. 2), § IV.)  In his Complaint, Plaintiff

indicated by check marks that he was alleging discrimination in violation of Title VII, the ADEA,

and the ADA (*see* Compl., at 1), that the discriminatory acts consisted of terminating and failing

to hire him (*see id.*, at 2), and that Defendant was "still committing these acts against [him]" (*id.*,

at 3).  Plaintiff also attached a half-page description of the facts of his case, alleging that he was

hired by Defendant, was told upon termination that he was "not physically agile enough," was

replaced, to the best of his knowledge, with a younger, Hindu employee, and was told that he was

not qualified when he reapplied for another position with Defendant.  (*See* Compl., at 3-4.)

Plaintiff then stated, "I believe that I was terminated based on perceived disability, age (55) and

religion (non-Hindu)."  (*Id.*)

On October 13, 2011, the Court ordered Plaintiff to amend his Complaint, so as to clarify

and expand his initially-pleaded allegations.  (*See* Dkt. 8.)  On January 10, 2012, Plaintiff filed his

Amended Complaint, which included more detailed allegations that the original, including an

allegation that "fewer than 10" of the "approximately one hundred employees at Ghandi

Engineering" were non-Hindu.  (*See* Am. Compl.)  This Court then proceeded to supervise

discovery in the action, pursuant to an Order of Reference issued on January 13, 2012.  (*See*

Dkt. 16.)  After repeated extensions of the discovery deadline, discovery closed on January 25,

2013, with the exception of a few discrete items, and the Court set a briefing schedule for

summary judgment motions.  (*See* Dkts. 32, 33.)

On February 22, 2013, Defendant timely moved for summary judgment on all of

Plaintiff's claims.  (*See* Notice of Motion, dated Feb. 22, 2013 (Dkt. 37); Def. Rule 56.1 Stmt;

Memorandum of Law in Support of Motion for Summary Judgment, dated Feb. 22, 2013 ("Def.

Mem.") (Dkt. 39); Frank Decl.[3])  In its motion, Defendant argues that Plaintiff cannot establish a

---

[3] Defendants also served and filed a Notice to Pro-Se Litigant Opposing Motion for
Summary Judgment, dated February 22, 2013 (Dkt. 44), setting out the requirements of Rule 56

*prima facie* case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for any of his discrimination claims; more specifically, Defendant argues that the evidence does not support an inference of religious, age, or disability discrimination (*see* Def. Mem. at 6), and that Plaintiff, as a matter of law, cannot show that he is a member of a class protected by the ADA because he is not disabled within the mean of that Act (*see id.*, at 11-13).  Further, Defendant asserts that, even if Plaintiff can establish a *prima facie* case of religious, age, or disability discrimination, Plaintiff cannot show that Defendant's proffered legitimate business reason for terminating Plaintiff was pretextual.  (*See id.*, at 13.)

By letter dated March 25, 2013 – four days before his March 29, 2013 deadline to file opposition papers (*see* Dkt. 32) – Plaintiff sought a 30-day extension of that deadline, which the Court granted, with Defendant's consent.  (*See* Dkt. 41.)  Then, by letter dated April 22, 2013 – approximately one week before the extended deadline – Plaintiff requested that the Court "extend" *discovery*, stating that, without first obtaining documents he had subpoenaed from the DOT, he would not be able to respond to Defendant's summary judgment motion.  (Dkt. 48.) Defendant opposed the discovery "extension" and the Court, construing Plaintiff's letter as a request to reopen an already-closed discovery period, denied the request and directed Plaintiff "to file his opposition to Defendant's summary judgment motion no later than May 3, 2013."  (Order, dated Apr. 26, 2013 (Dkt. 52).)  The Court further directed Plaintiff that, if he "believ[ed] that, in any respect, he [could] []not present facts essential to justify his opposition to the motion, he should make a specific showing of this, by affidavit or declaration, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure."  (*Id.*)

---

of the Federal Rules of Civil Procedure and Local Civil Rule 56.1, as required when a represented party moves for summary judgment against a *pro se* party.

Three days after the Court issued its April 26 Order, the City filed a motion (Dkt. 54),[4] seeking to quash the subpoena that Plaintiff had served on it (as referenced in Plaintiff's April 22 letter to the Court), on the ground that the subpoena was facially over-broad and would have required the DOT to produce a large volume of documents in an extremely short period of time (*see* Memorandum of Law in Support of Non-Party the City of New York's Motion To Quash Plaintiff's Subpoena and for a Protective Order, dated Apr. 26, 2013 (Dkt. 57), at 4-7.)   Although the subpoena in question was issued by the Clerk of Court on April 13, 2013, the City presented evidence that it was not served with the subpoena until April 23, 2013, the day *after* Plaintiff sent his letter to the Court seeking an "extension" of discovery to enable him to obtain the subpoenaed documents.  (*See* Affidavit of Malgorzata Banka in Support of Non-Party The City of New York's Motion to Quash Plaintiff's Subpoena and For a Protective Order, dated Apr. 26, 2013 (Dkt. 55) ¶ 4 & Ex. A.)  Essentially, the subpoena called for the production of all "project records," without limitation, relating to the DOT project on which Plaintiff was employed by Defendant, covering the entire time-span of the project.  (*See id.*, Ex. A.)  Plaintiff did not respond to the City's motion to quash, and the Court granted the motion "without prejudice to Plaintiff seeking to subpoena documents from the City in the future, should he be able to demonstrate specific need, either under Fed. R. Civ. P. 56(d), or for trial."  (Order, dated May 14, 2013 (Dkt. 60) (Mem. Endors.).)  The Court also directed Plaintiff "to serve no further subpoena on the City without prior leave of Court."  (*Id.*)

---

[4] Although the City apparently attempted to file this motion on April 26, 2013, the same date as the Court's Order (*see* Dkts. 50-51), the motion was rejected because of ECF filing errors, and the City therefore refiled the motion on April 29, 2013 (*see* Dkts. 54-57).

On May 3, 2013, Plaintiff filed an opposition to Defendant's motion for summary

judgment, consisting of a form reply affirmation with no attachments (Affirmation in Opposition

to Motion, dated Apr. 28, 2013 (Dkt. 58)), and a Response to Defendant's Rule 56.1 Statement.

As noted above (*see* n.1, *supra*), Plaintiff attached several exhibits to his Response, including a

page titled "Additional Points and Conclusion."  (Pl. Add'l Points.)

On May 23, 2013, Defendant filed a reply memorandum.  (Reply Memorandum of Law in

Support of Motion for Summary Judgment, dated May 23, 2013 ("Def. Reply") (Dkt. 61).)

## DISCUSSION

## I.   APPLICABLE LEGAL STANDARDS

### A.   Summary Judgment

Under Rule 56(c), a motion for summary judgment should be granted "if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S.

317, 322-23 (1986); *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 128 (2d Cir. 1996).  The moving

party bears the burden of showing that no genuine issue of material fact exists. *Adickes v. S.H.*

*Kress & Co.*, 398 U.S. 144, 157 (1970).  Accordingly, the Court "must view the evidence in the

light most favorable to the party against whom summary judgment is sought and must draw all

reasonable inferences in his favor." *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir.

1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

Nonetheless, the party opposing summary judgment must cite to "particular parts of

materials in the record" or show "that the materials cited [by the movant] do not establish the

absence . . . of a genuine dispute" as to any material fact.  Fed. R. Civ. P. 56(c)(1).  In order to

make such a showing, "[t]he non-moving party may not rely on conclusory allegations or

unsubstantiated speculation," *Scott v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing

*D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)), but, rather, must present

"significant probative evidence tending to support the complaint."  *Smith v. Menifee*, No. 00 Civ.

2521 (DC),  2002 WL 461514, at *3 (S.D.N.Y. Mar. 25, 2002) (citing *First Nat'l Bank of Ariz. v.*

*Cities Servs. Co.,* 391 U.S. 253, 290 (1968)).  "If the evidence is not significantly probative,

summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50

(1986) (citations omitted).

 Where the party opposing summary judgment is proceeding on a *pro se* basis, the Court

must read that party's papers liberally and interpret them "to raise the strongest arguments that

they suggest."  *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation

marks and citation omitted).  Even a *pro se* plaintiff, however, cannot defeat a motion for

summary judgment by relying merely on the allegations of a complaint.  *See Champion v. Artuz*,

76 F.3d 483, 485 (2d Cir. 1996).  Rather, when confronted with evidence of facts that would

support summary judgment, the plaintiff must come forward with evidence in admissible form

that is capable of refuting those facts.  *See Jermosen v. Coughlin*, 877 F. Supp. 864, 867

(S.D.N.Y. 1999) (in order to defeat summary judgment, a *pro se* plaintiff must present

concrete evidence from which a reasonable jury could return a verdict in his favor); *see also*

Fed. R. Civ. P. 56(c).

 In sum, the Court "cannot try issues of fact; it can only determine whether there are issues

to be tried" on the evidence presented.  *Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-Paramount*

*Theatres, Inc.,* 388 F.2d 272, 279 (2d Cir. 1967); *accord Sutera v. Schering Corp.*, 73 F.3d 13,

15-16 (2d Cir. 1995).  Where there is no genuine issue of material fact, viewing the evidence in

the light most favorable to the nonmoving party, summary judgment is appropriate.  *See Liberty Lobby*, 477 U.S. at 248-250.

B. **Employment Discrimination**

While separate statutes provide the basis for claims of religious, age, and disability discrimination, all such claims are evaluated using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) (religious discrimination under Title VII); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 76-77 (2d 2001) (age discrimination under the ADEA); *Stephan v. West Irondequoit Cent. Sch. Dist.*, 450 F. App'x 77, 79 (2d Cir. 2001) (disability discrimination under the ADA). "Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of discrimination."  *Holtz*, 258 F.3d at 76, 77.  To establish a *prima facie* case, the plaintiff must show that:  (1) he was a member of the class protected by the relevant statute; (2) he was qualified for the job in question; (3) the employer took an adverse employment action against him; and (4) the adverse action took place "under circumstances giving rise to an inference of discrimination."  *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000).  At the summary judgment stage, the burden of proof that a plaintiff must meet to make out a *prima facie* case is *de minimis.  Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 94 (2d Cir. 2001).  "In determining whether the plaintiff has met the *de minimis* initial burden of showing 'circumstances giving rise to an inference of discrimination,' the function of the court on a summary judgment motion is to determine whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive."  *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 204 (2d Cir. 1995) (internal quotation marks and citation omitted).

12

If the plaintiff makes this *de minimis* showing, then a presumption of discrimination is created, and, to rebut the presumption, the employer must articulate some legitimate, non-discriminatory reason for the adverse action taken against the plaintiff.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142-43 (2000); *see also Schnabel*, 232 F.3d at 87.  The employer's burden, in this regard, is not to prove, conclusively, that the proffered reason was the actual reason for the adverse action, but rather simply to undercut the plaintiff's *prima facie* case "through the introduction of admissible evidence" of legitimate reasons for the adverse action against the plaintiff.  *Texas Dept. of Comty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981).

If the employer articulates such a reason, then the presumption of discrimination disappears, *see St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510 (1993); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000), and the plaintiff must come forward with evidence capable of showing "that the proffered reason was merely a pretext for discrimination," *Heyman v. Queens Village Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999) (citation omitted).  Mere pretext "may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more."  *Id.* (internal quotation marks and citation omitted).  "To defeat summary judgment . . . 'the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors.'"  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 78 (2d Cir. 2001) (quoting *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995) (internal quotation marks omitted)).  "The ultimate burden of persuading the trier of fact that the

defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

An extra measure of caution is needed in "granting summary judgment to an employer when, as here, its intent is at issue." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). An employer's records will rarely document the state of mind or motives of its decision-makers, and therefore materials "must be carefully scrutinized for circumstantial evidence that could support an inference of discrimination." *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir. 1996). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases."); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) ("[T]he salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation.").

## II.   DEFENDANT'S MOTION

### A.   Religious Discrimination

Defendant argues that, based on the evidence in the record, Plaintiff cannot make out even a *prima facie* case of discrimination based on religion. (*See* Def. Mem., at 6-7.) Specifically, Defendant contends that Plaintiff cannot make out the fourth element of a *prima facie* case – *i.e.*, that his termination took place under circumstances giving rise to an inference of discrimination.[5]

---

[5] Defendant also appears to argue, on reply, that Plaintiff was not qualified for his position. (*See* Def. Reply at 2 ("*In addition*, . . . plaintiff also could not satisfy the second

(*See id.*)  In support of its position, Defendant points out that the undisputed evidence demonstrates that Plaintiff did not inform anyone at Gandhi Engineering that he is Jewish, that the company does not keep records of its employees' religious affiliations, that Plaintiff has conceded that no one at the company discussed his religion, and that, in fact, Plaintiff's religion was unknown to Defendant during the time Plaintiff was employed.  (*See* Def. Mem., at 7 (citing Sacks Dep., at 75-77); *see also* Def. Rule 56.1 Stmt. ¶¶ 15, 17; Pl. 56.1 Stmt. ¶ 17.)  Defendant is correct that summary judgment is warranted in its favor on Plaintiff's religious discrimination claim, given that Plaintiff relies entirely on speculation and inadmissible hearsay to oppose Defendant's arguments, and has not adequately demonstrated that he should be allowed additional discovery prior to the Court's decision.

As to the speculative nature of Petitioner's opposition, he proffers his own deposition testimony that he was replaced, on the job, by a person he believed to be Hindu.  (*See* Sacks Dep., at 78:21-79:8.)  Plaintiff testified, though, that his information that this individual actually replaced him came from unidentified "railroad employees" (Sacks Dep., at 80:2-11), and he further testified that his assumption that this person was Hindu was based only on what he

---

element of a prima facie case of being qualified for the job.") (emphasis added)); *see also id.* (asserting that, "based on his work performance" at Gandhi Engineering, Plaintiff was not qualified for his position).)  As this argument was raised for the first time on reply, it should not be considered by the Court.  *See United States ex rel. Saski v. New York Univ. Med. Ctr.*, No. 05 Civ. 6163 (LMM)(HBP), 2012 WL 220219, at *7 n.5 (S.D.N.Y. Jan. 25, 2012) ("Courts generally do not consider arguments raised for the first time in a reply brief.").  In any event, if Defendant is attempting to argue that Plaintiff's supposed failure to perform the job requirements rendered him "unqualified" for the job, then Defendant's argument is misplaced, as such an argument more properly relates to whether Plaintiff was fired for the non-discriminatory reason of lack of performance. *Cf. Calabro v. Westchester BMW, Inc.*, 398 F. Supp. 2d 281, 289 (S.D.N.Y. 2005) (cautioning against "shift[ing] onto the plaintiff's *prima facie* case an obligation to anticipate and disprove" whatever non-discriminatory reasons the employer may proffer).

"observed culturally," and on what he surmised from this person's "language and . . . surname" (*id*., at 79:8-11).  Moreover, Plaintiff himself diverged from this account in his Response to Defendant's Rule 56.1 Statement, in which he now asserts that he was *not* replaced by a single individual, but rather "by a series of individuals," whose identities he apparently does not know, but who he suggests could be identified by inspector reports that he has not submitted.  (*See* Pl. Response ¶ 14.)

While evidence that a plaintiff was "replaced by a person outside the protected class" may give rise to an inference of discrimination, *Meiri v. Dacon*, 759 F.2d 989, 996 (2d Cir. 1985), the Court's "determination of whether circumstances 'giv[e] rise to an inference' of discrimination must be a determination of whether the proffered *admissible evidence* shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive."  *Id.* at 38 (alteration in original) (emphasis added).  Speculation and hearsay, such as that offered by Plaintiff on this point, is insufficient to support an inference of discrimination at the summary judgment stage.  *See Burke v. Evans*, 248 F. App'x 206, 208 (2d Cir. 2007) (holding that plaintiff failed to make out a *prima facie* case of discrimination where he "did not produce any evidence beyond vague recollections of conversations with co-workers, anecdotes based on hearsay, and other unsupported speculation").

As to any need for additional discovery, Plaintiff's arguments, liberally construed, may be suggesting that, without the aforementioned "inspector reports," Plaintiff cannot adequately respond to Defendant's motion.  Plaintiff may also be attempting to argue that he needs additional statistical evidence to support his allegation that Defendants did not necessarily discriminate

against Jews, *per se*, but rather, more generally against non-Hindus.[6]  (*See* Am. Compl., App'x;

Pl. Add'l Points ¶ 1 (stating that the "statistical data regarding employee religion is incomplete").)

Prior to the date when Plaintiff's opposition was due, however, the Court explicitly informed him

that, if he believed that he needed any additional discovery in order to be able to respond to

Defendant's motion, he should submit an affidavit or declaration to that effect, in accordance with

Rule 56(d) of the Federal Rules of Civil Procedure.  (*See* Order, dated Apr. 26, 2013 (Dkt. 52),

¶ 2.)  Furthermore, in order to justify such belated discovery, Plaintiff should have explained with

specificity, in his affidavit or declaration, "how [he] w[ould] obtain that discovery; how those

facts [would be] reasonably expected to raise a genuine issue of material fact; what efforts have

been made to date to obtain that discovery; and why the earlier efforts were unsuccessful."  *Gene

Codes Forensics, Inc. v. City of New York*, 812 F. Supp. 2d 295, 307 (S.D.N.Y. 2011).  Here,

Plaintiff has submitted no affidavit or declaration to address any need for additional discovery,

and thus is not entitled to relief under Rule 56(d).  *See Paddington Partners v. Bouchard*, 34 F.3d

1132, 1137 (2d Cir. 1994) (noting that referencing need for additional discovery in memorandum

opposing summary judgment "is not an adequate substitute" for an affidavit).

Further, although Plaintiff vaguely references evidence that he has apparently not obtained

to date, he makes no effort to explain, in any way, why he was unable to obtain any needed

"inspector reports" during the discovery period in this action.  Plaintiff's deposition testimony

demonstrates that he knew of the existence and potential relevance of such reports from his own

experience (*see* Sacks Dep., at 49, 83:20-25), and thus he cannot contend that he only learned of

---

[6] *Cf. Adames v. Mitsubishi Bank Ltd.*, 751 F. Supp. 1565 (E.D.N.Y. 1990) (allowing class action alleging discrimination against "non-oriental" or "non-Japanese" employees to go forward).

them, or of their supposed importance, after the close of the discovery period.  Plaintiff has also

failed to show that evidence of the religion of Defendant's other employees even *exists* in any

documentary form, in the possession of either Defendant or the DOT, and Defendant has stated –

without any challenge from Plaintiff – that it maintains no records that would reveal such

information.  Moreover, while Plaintiff initially alleged that "[o]f approximately one hundred

employees at Gandhi Engineering, Inc.[,] fewer than ten are of faiths other than the Hindu faith"

(Am. Compl., App'x), Plaintiff has now admitted the truth of Defendant's statements reflecting

that, of Defendant's 64 employees, only four were known, informally, to be Hindu, and 23

(apparently not including Plaintiff) were known, informally, to be non-Hindu.  (Def. & Pl. 56.1

Stmts.¶ 17.)  For these reasons, Plaintiff has not shown that a reopening of the discovery period

would be likely to enable him to obtain any "statistical data" that could support his claim of

religious discrimination.

Under the circumstances, I do not recommend that discovery be reopened.  Rather, I

recommend that the Court grant Defendant summary judgment dismissing Plaintiff's religious-

discrimination claim, on the ground that Plaintiff has not made out a *prima facie* case of such

discrimination.

### B.    Age Discrimination

Defendant also argues that Plaintiff has failed to make out a *prima facie* case of age

discrimination because the evidence similarly does not support an inference that Plaintiff's

termination was age based.  (*See* Def. Mem., at 8-9.)  Although evidence that a terminated

employee was replaced with someone "substantially younger" may support an inference of age

discrimination, as required for a *prima facie* case, *Brennan v. Metropolitan Opera Ass'n, Inc.*,

192 F.3d 310, 317 (2d Cir. 1999), Plaintiff has provided no such evidence here.

18

Plaintiff testified that his age-discrimination claim was based on "[r]eplacement by someone much younger than [he]" (Sacks Dep., at 105:20-24), presumably referring to the same employee, mentioned above, who Plaintiff believed replaced him and surmised was Hindu.  Yet, for the same reasons discussed above, Plaintiff's testimony that he was told that a certain individual replaced him is inadmissible hearsay that cannot form the basis of his *prima facie* case. Plaintiff also provides no evidence as to the ages of the multiple individuals who, he now claims, filled his role.  (*See* Pl. Response ¶ 14.)

This leaves only Plaintiff's contention that "87.5% of all employees terminated from 2009 to the present were over the age of 40" (Pl. Add'l Points ¶ 2), but, although statistical evidence may be used to show that an employer "exhibits a pattern of . . . terminating older workers," Plaintiff's "proffered evidence of a pattern of discrimination does not meet . . . minimal standards [of admissibility because] statistical evidence . . . must be supported by expert analysis," *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 515-516 (S.D.N.Y. 2010) (citations omitted) (noting that such expert analysis is necessary because without it "courts would have a difficult time ensuring that juries consider only 'statistically significant' data" (citing *Ottaviani v. SUNY New Paltz*, 875 F.3d 365, 371 (2d Cir. 1989))).

Here, Plaintiff's has not only failed to provide an expert analysis, but his own statistical summary suffers from several obvious flaws that make it less relevant than it might appear, even if it were admissible.  First, the Court notes that the evidence to which Plaintiff refers actually shows that 19 of the 24 terminated employees, or approximately 79%, were over the age of 40 at the time of their termination, not 87.5% as Plaintiff contends.[7]  (*See* Pl. Add'l Points ¶ 2 (citing

---

[7] One additional employee is listed as having been exactly 40 in 2010, but she is also listed as having been terminated in 2009 (*see* Pl. Response, Ex. F, at 3), thus she was either 39 or

Pl. Response ¶ 14, Ex. F (table listing ages and termination dates of Ghandi Engineering employees from 2009 to 2013)).)  Second, the records do not indicate how many, if any, of the "terminated" employees, several of whom were in their 70s, retired or resigned of their own accord.  Finally, any such statistics must be placed in context of the fact, conceded by Plaintiff, that approximately two thirds of Defendant's employees at the time Plaintiff was employed were over age 40.  (*See* Def & Pl. 56.1 Stmts. ¶ 12.)

As Plaintiff has not come forward with reliable, admissible evidence that the circumstances of his termination give rise to an inference of age discrimination, he cannot establish a *prima facie* case of age discrimination under *McDonnell Douglas*.  I therefore recommend that Defendant also be granted summary judgment in its favor on this claim.

### C.      Disability Discrimination

Defendant finally argues that there is no evidence to support a *prima facie* case that Plaintiff was subject to discrimination on the basis of perceived disability because the allegedly perceived impairment, lack of "agility," does not qualify as a "disability" under the ADA.  (*See* Def. Mem., at 9-13.)  Defendant alternatively argues that, even if the Court were to find that Plaintiff has made out a *prima facie* case of disability discrimination, the evidence is nevertheless insufficient to support Plaintiff's claim that Defendant's proffered legitimate reason for Plaintiff's termination was a pretext for unlawful discrimination.  (*See id.*, at 13.)  These two arguments are discussed in turn.

---

40 at termination, and not within the "over 40" demographic on which Plaintiff focuses (*see* Pl. Add'l Points ¶ 2).  Further, even including that employee would mean that 83% of terminated employees were 40 years of age or older, which would still not explain the source of Plaintiff's 87.5% figure.

1.      *Prima Facie* **Case**

An individual is disabled within the meaning of the ADA if the individual has

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) [is] regarded as having such an impairment.

42 U.S.C. § 12102(1).  Under previous versions of the ADA, there were "two . . . ways in which individuals [could] fall within" the statutory definition of "being regarded as having" a disability: "(1) [the employer] mistakenly believe[d] that a person ha[d] a physical impairment that substantially limit[ed] one or more major life activities, or (2) [the employer] mistakenly believe[d] that an actual, nonlimiting impairment substantially limit[ed] one or more major life activities."  *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999).  Congress "explicitly rejected" *Sutton*, however, *see Widomski v. SUNY at Orange*, No. 09 Civ. 7517 (KMK), 2013 WL 1155439, at *7 (S.D.N.Y. Mar. 20, 2013), when it passed the ADA Amendments Act of 2008 (the "ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553, 3553 (2008) (finding that *Sutton* "and its companion cases have narrowed the broad scope of protection intended to be afforded by the ADA, thus eliminating protection for many individuals whom Congress intended to protect").

Under the ADAAA, discrimination is based on a perceived disability, and is hence illegal, "*whether or not* the [actual or perceived] impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A) (emphasis added).  Moreover, the ADAAA's "[r]ules of construction regarding the definition of disability" provide that the "definition of disability . . . shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of this chapter."  42 U.S.C. § 12102(4)(A).  Thus, on summary judgment, to establish that he is disabled within the meaning of the ADAAA, a plaintiff is "only required to

raise a genuine issue of material fact about whether [his employer] regarded him as having a mental or physical impairment." *Hilton v. Wright*, 673 F.3d 120, 129 (2d Cir. 2012).

EEOC regulations interpreting the ADA and ADAAA, to which this Court gives significant deference, *see Francis v. City of Meriden*, 129 F.3d 281, 283 n.1 (2d Cir. 1997), interpret "[p]hysical or mental impairment" to mean "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1).  Still, the EEOC takes the position that "[t]he definition of 'impairment' does not include physical characteristics such as eye color, hair color, left-handedness, or height, weight, or muscle tone that are within 'normal' rage and are not the result of a physiological disorder."  29 C.F.R. Pt. 1630, App.

Defendant's argument that a perceived lack of "agility" is not a perceived "disability" under the ADA relies exclusively on one Second Circuit case, *Cardo v. Arligton Central Sch. Dist.*, 473 F. App'x 21 (2d Cir. 2012).  The plaintiff in *Cardo*, however, was fired in 2007, *see Cardo v. Arlington Central Sch. Dist.*, No. 07 Civ. 8667 (JSR), 2011 WL 135003, at *2 (S.D.N.Y. Jan. 13, 2011), before the ADAA took effect, and the case was therefore governed by pre-ADAA law.  *See Widomski*, 2013 WL 1155439, at *7 ("In considering ADA claims based on conduct that occurred prior to 2009, the Second Circuit has applied 'the version of the statute in effect during the time period at issue.'" (quoting *Ragusa v. Malverne Union Free Sch. Dist.*, 381 F. App'x 85, 87 n. 2 (2d Cir.2010))).[8]

---

[8] In *Hilton v. Wright* the Second Circuit applied the ADAAA retroactively, to claims that arose before the Amendment's effective date, without comment.  673 F.3d at 128-29.  *Hilton*

Under the ADAAA, a perceived "physiological . . . condition . . . affecting . . . [the] musculoskeletal" system, 29 C.F.R. § 1630.2(h)(1), is a perceived "impairment" covered by the ADA.  Here, as set out above, Plaintiff has testified that Passaro told him that his employment was being terminated due to his lack of "agility" (Pl. Add'l Points ¶ 5), and, during discovery, Ghandi himself stated under oath that Plaintiff's employment was terminated because Plaintiff was "unable" to perform his job (Pl. Response, Ex. D, at 1).  These statements, taken together, and coupled with the descriptions of the tasks that, according to Defendant, Plaintiff failed to perform (the majority of which involved, *inter alia*, walking, climbing, or bending (*see* Def. Rule 56.1 Stmt. ¶ 25)), suggest that Defendant held the perception that Plaintiff could not meet the physical demands of his job.  Viewed in the light most favorable to Plaintiff, this evidence gives rise to an inference that Defendant believed that Plaintiff had a physiological condition, most likely involving the musculoskeletal system; that Defendant further believed that this impairment prevented Plaintiff from performing key components of his job; and that Plaintiff's employment was terminated, at least in part, for that reason.  Plaintiff has, therefore, made out a *prima facie* case of discrimination on the basis of perceived disability.

### 2.   **Evidence of Pretext**

Defendants alternatively argue that, even if Plaintiff has made out a *prima facie* case of disability discrimination, the Court should still grant summary judgment in Defendant's favor

---

appears to be an outlier in this regard, however, and, after it was decided, the Second Circuit reverted to applying "the version of the ADA in effect during the period at issue."  *Thomsen v. Stantec, Inc.*, 483 F. App'x 620, 622 (2d Cir. 2012); *see also Petrone v. Hampton Bays Union Free Sch. Dist.*, No. 03–CV–4359 (SLT) (ARL), 2013 WL 3491057, at *17 & n.9 (E.D.N.Y. July 10, 2013) (noting that, while the Second Circuit has not explicitly addressed the question of ADAAA retroactivity, it has assumed the statute not to be retroactive; collecting cases from sister circuits and from district courts in this circuit finding ADAAA not retroactive).

because Plaintiff cannot prove discrimination in the face of the legitimate, non-discriminatory reason for Plaintiff's termination that Defendant has proffered – *i.e.*, that Plaintiff's performance of his job was poor.  (*See* Def. Mem., at 13.)  For the reasons discussed above, however, a rational jury could conclude, from the evidence of record, that Defendant believed that Plaintiff could not perform his job because of a perceived disability.  In this context, Defendant's proffered explanation that Plaintiff was terminated for poor performance of his duties is insufficient to warrant summary judgment.

There is, of course, a difference between an employer's perception, on the one hand, that an employee is *unwilling* to perform the physical requirements of his job and the employer's perception, on the other hand, that the employee is *unable* to perform those job duties.  Whereas the former could provide the employer with a legitimate, non-discriminatory reason for termination, the latter would suggest a perceived disability that may be an impermissible reason for termination.  In this case, as already discussed, the performance issues cited by Defendant include Plaintiff's purported failure to perform a number a physical tasks, such as "climb[ing] up and down on the construction ladders," "bend[ing] to measure," and "walk[ing] on the Rebar mats."  (*See* Def. Rule 56.1 Stmt. ¶ 25.)  Regardless of whether Plaintiff was, as he contends, actually able to perform these tasks, Defendant has suggested, during discovery, that Plaintiff's employment was terminated because Plaintiff did not – and *could not* – engage in these activities. (Pl. Response, Ex. D, at 1 (sworn statement by Ghandi that he told Plaintiff he was being terminated because he was "*unable* to perform his duties as an inspector" (emphasis added).)[9]

_____

[9] Although Defendant does contend, on its motion that, in addition to failing to perform physical tasks, Plaintiff also failed to perform a few non-physical tasks (such as turning in daily reports and paying contractors properly (*see* Def. Rule 56.1 Stmt. ¶ 25)), all Plaintiff must show in order to survive summary judgment is a triable issue of fact as to whether a perceived

In addition, on the issue of "pretext," it is notable that Ghandi's statements as to the reason for Plaintiff's termination have changed over the course of this litigation. The fact that his current statement, that Plaintiff was fired solely for poor performance (*see* Ghandi Aff. ¶¶ 7-9), is at odds with his earlier sworn statement, that Plaintiff was "unable" to do the duties of an Inspector (Pl. Response, Ex. D), calls his credibility into question. The changes in Passaro's statements on this point – shifting from his earlier testimony that he gave Plaintiff *no* reason for his termination (*see* Pl. Response, Ex. C, at 1) to his current testimony that he told Plaintiff "that his employment was being terminated due to performance" (Passaro Aff. ¶ 9) – are noteworthy for the same reason. Defendant's now-proffered legitimate reason for Plaintiff's termination is further suspect because of the information Defendant provided on an earlier worker's compensation form, where it made no reference to any performance issues at all, but rather attributed Plaintiff's termination to a lack of available work. (*See* Pl. Add'l Points ¶ 8.) These contradictions in Defendants' own words cast doubt on whether its current statements are "[]worthy of credence." *See Heyman*, 198 F.3d at 72; *see also EEOC v. Ethan Allen, Inc.* 44 F.3d 116, 120 (2d Cir. 1994) (noting that "a reasonable juror could infer that explanations given by [defendant] . . . were pretextual" where EEOC introduced evidence "suggesting that [defendant] provided inconsistent explanations for its decision to terminate" an employee).

Taken as a whole, the record presented to this Court is sufficient to raise a triable issue of fact as to whether Defendant's current explanation for Plaintiff's termination (that Plaintiff simply failed to perform work that he was presumably capable of performing) is a pretext for

---

disability "was at least one of the motivating factors" behind his termination, *Holtz*, 258 F.3d at 78. Thus, as long as Plaintiff has come forward with evidence capable of showing that a perceived physical impairment was one of the reasons for his termination, summary judgment on Plaintiff's disability discrimination claim should be denied.

25

unlawful discrimination based on a perceived disability.  The same is true with respect to Defendant's asserted reason as to why it did not rehire Plaintiff, when he later reapplied for the same type of position.  Accordingly, I respectfully recommend that Defendant's motion for summary judgment as to Plaintiff's claim for disability discrimination under the ADA be denied.

## CONCLUSION

For the foregoing reasons, I recommend that Defendant's motion for summary judgment (Dkt. 37) be granted as to Plaintiff's claims of discrimination based on age and religion, but denied as to Plaintiff's claim of discrimination based on perceived disability.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Amended Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Deborah A. Batts, United States Courthouse, 500 Pearl Street, Room 2510, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1660, New York, New York, 10007.  Any requests for an extension of time for filing objections must be directed to Judge Batts.  FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d

298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York
        August 23, 2013

Respectfully submitted,

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

The Honorable Deborah A. Batts, U.S.D.J.

Mr. Farrell Sacks
73-22 171st Street
Flushing, NY 11366

Counsel for Defendants (via ECF)

27